I do have two cases to be argued on the appeals calendar today. I am told that all counsel is ready. Thank you. Mr. Ricotta. Yes. Yes. How are you feeling this morning, sir? Better, I hope. Oh, okay. Thank you. I appreciate that. So I see that you've reserved two of your ten minutes for rebuttal. If my colleagues are ready, we will proceed. Thank you so much. Thank you. May I proceed? Yes, sir. We've brought this appeal on behalf of our client. Our client, as I'm sure the court is well aware, brought a claim to the ADA as an employee of the DOE, alleging that during the course of his employment, he was denied reasonable accommodations in violation of the American Civil Rights Act. Summary judgments of the lower court granted summary judgments are ultimately finding that he did not violate the ADA and that on the two particular instances in question, there were no vacancies that would allow for him to proceed. We believe that to be a factual error and are asking that the court reverse course. There were two particular instances here that are first was in August, August, September of 2016, Mr. Cora required an accommodation to be transferred out of his school. The medical transfer due to issues he was having with his supervisor, it was documented, it was medically warranted, and it was approved by the Department of Education. None of that is. So if I if I may, I just want to make sure that you think that the error that would be tried would be whether or not there was a vacancy. I think the error that would be tried is whether the Department of Education failed to provide reasonable accommodation that did not constitute an undue hardship. With respect to the 16 accommodations, Mr. Torres effectively requested two accommodations, one a transfer out of an environment that was medically unhelpful for him and two, a leave in order to recover from what he had been experiencing. And he got the leave, right? So he couldn't effectuate the transfer until he got back. Is that correct? No. So what happened? And that's where I think with respect to that printer, there is a fact that required the Department of Education. I'm sorry. I'm sorry. It required trial to see whether or not he could have taken it when he was out, whether or not they could have done. In other words, your honor, what essentially happened was Mr. Torres was granted an accommodation of. He then requested and was granted a restoration of the Department of Education, however, said, well, we're not going to do both. We're going to do one or the other. I'm sorry. Is that correct? I was my understanding was that he was he was first given the transfer and then he requested the leave. And then when they gave him the leave, they said, let's see if you still need the transfer when you come back. Isn't that what happened based on the fact here is that he was granted the transfer while they were in the process of processing the transfer. He requested the restoration of health. And when he requested the restoration of health, he was advised that we're not going to process the transfer. If you're going to take the restoration. OK, so what? If I may, then so ultimately we're being asked, I think, is whether or not it was whether or not the DOE was obligated to hold it open until he got back. Because you're not disputing that he couldn't have taken or effectuated a transfer when he was actually on leave. Well, they could have transferred him into another to another school. There's no reason by just like he was at his position was there that the school he was at while he was out on a restoration of health leave by someone temporarily until he returned. There was literally no reason. There's no fact that the DOE provided to show that this would have been an undue hardship. It's simply that I believe in that was vague. May I ask you how you fit in our McBride decision into your argument that there's error here? Because as I understand it, that's the case being relied on by your adversary to say that you had to show and you failed to show the availability of a vacancy that he could have been transferred into. Help me out with your view on that. Sure. So I think that more than more so than this 2016 transfer and accommodation that that applies as much to the April 2017. And they also cited the Jaquan case 205-F3D-566. But those cases are clearly distinguishable in that in Jaquan, for example, the reason given for the denial of the transfer, the reason they could not provide the accommodation, was they said there isn't a position, there's no vacancy to which you could transfer. In this case, there was no indication, there was no identification. And the evidence is that it wasn't that he was denied the 2017 accommodation of a hardship transfer because of a lack of a vacancy. Well, let me be clear as to what we're talking about. We're talking about April of 2017, right? When he applies for the second hardship transfer. Yeah. And the district court found or granted judgment to your adversary because of a view that you had failed to adduce facts showing that there was a vacancy to which he could have been transferred at what was in effect the last two months of school year. And your adversary says McBride says you have to come forward with some evidence that would admit such a finding. I want to know whether you're saying that they have misunderstood McBride, misunderstood the facts, or where you think the error is in relying on McBride to uphold the district court's judgment. Help me out. I think it's a misapplication of the facts, because the facts here are not that the position was denied due to a lack of a vacancy. But you're missing, I'm not being clear in my question. I'm suggesting to you that McBride suggests the law places the burden on you to show that an accommodation that you were seeking could have been met at that time. So you would have had to have shown that there was a transfer at whatever school and your client would have been prepared to accept that. Is that what the law requires or are you disputing that? I think that the McBride case is sound law. I'm not disputing that the McBride case is sound law. I do think that this case is distinguishable from McBride and the other cases they cite too. Because as I was referencing, A34 of the record, their denial of the transfer was not based on a lack of a vacancy. They didn't get to that point. This is part of what we've argued before the lower court. To put the onus on a plaintiff to find a vacancy when the Department of Education failed to honor their ADA obligations by going through the first step of the process, which was saying, yes, your transfer request is medically warranted. At that point, if they had said, however, we cannot grant that to you because there is no vacancy available, then I think at that point we would have the onus of establishing, well, that's not true. There were vacancies and here they are and this is what we're going to do through discovery. We don't get to that point and shouldn't be obligated to get to that point based on this fact pattern. But wasn't discovery closed here? Discovery did close. So to the extent, you don't have an injury, if I understand your adversary's argument, unless there was a vacancy to which your client could have been transferred. Is that not right? For the April 2017 transfer, I don't know that I would agree that there's no injury if they do not – because there's a variety of things the Department of Education could have done. If they deemed it medically warranted, which they should have because it was the same record that justified medically warranted transfer in August, there's a variety of things they could have done. Yes, your medical transfer is warranted. When there's a position available, we will place you in it. Until then, you'll remain on leave. What the Department of Education did to this was they basically said, yes, we identified that you've got emotional disabilities that are negatively impacted by going back to the school. But if you want to get help, then you have to eventually go back to the school and subject yourself to that again until and unless we find you a position. Which is not what the ADA designed. I mean, you can receive multiple accommodations at the same time. And circling back to September 2016, there was no factual basis by which the Department of Education needed to and should have rescinded the hardship transfer because of the restoration of health. The Department itself acknowledged it was so traumatic for him that he should not be there. So they placed him in this environment and this situation where he literally had to make a choice of either going back to work in another school, unhealthy, or getting healthy and then going back, hoping he could get out quick enough to not undo everything that he did in trying to get healthy. And their argument is just simply put that from a factual standpoint, if you have a back injury, you can get an accommodation of no lifting and no stretching and no standing for prolonged periods of time. There is no basis, in fact, for the department to be able to say, you can't both have this transfer approved and be assigned on paper to another school for when you return and then also return. Let me make sure my colleague, Judge LaValle, are you interested in jumping in? No, it's okay. Okay. Thank you so much, Mr. Ricotta. You do have two minutes on rebuttal. So we'll hear from opposing counsel, please. Ms. Fletcher? Ms. Fletcher, I was hoping that you could discuss McBride and also spend some time on an argument that I found largely unpersuasive about the idea that someone is given a reasonable accommodation by being on unpaid leave. I'm not sure that that is an argument you need to win in order to prevail, but if you could address both of those, because those were things that were pretty prevalent in your brief. Certainly. I'll start with McBride. Under McBride, a plaintiff bears a burden on a prima facie case to show that a reasonable accommodation is available. And in this case, because the plaintiff is seeking a transfer, McBride holds that the burden of production as well as the burden of persuasion at the prima facie stage lies with the plaintiff. But what do you make of his argument that he didn't know that he needed to produce this because that wasn't the basis for denial? I understand your opposing counsel's argument to be you denied it because it wasn't medically warranted, so they did not have any reason at that point to adduce facts to suggest that there was, in fact, a vacancy. I have two responses to that, Your Honor. The first is that this is a basic part of the prima facie case. It goes to the question of whether the plaintiff would be able to perform their job. There's a reasonable accommodation existent that would enable them to perform their job. So it's a necessary part of a prima facie case in any situation, regardless of what the stated basis was for the denial of the hardship transfer. I'm sorry, and what authority do you think would best capture that nuance? I think I would point to McBride, excuse me, to Gacon. In that case, they pointed out how the defendant had spent the vast majority of the case arguing that the civil service rules prevented them from providing the transfer that was requested. The court, however, zeroed in on the fact that there was no vacancy, there was no evidence that a vacancy was available. So even though primarily the defendant had relied on the civil service rules and the difficulty of the civil service rules, there was still a burden on the plaintiff to show that some vacancy existed for which they were qualified to which they could have been transferred into. So in this case, I understand that they're saying, well, there was a hardship transfer, but the prima facie case requires showing that there's some accommodation available that would enable them to perform their job. And if they're relying on a transfer for that, they had to show that some vacancy existed, some evidence that somewhere this vacancy existed. Well, and they did give some, right? So one was a conclusory statement that there's always vacancy, and the second was asking us to infer that there was a vacancy because there was a vacancy in August of 2016. How does that fit into this? Well, the existence of a vacancy in August of 2016 does not establish that a full school year later, there was also a vacancy. The burden is to show that at or around the time that the accommodation is requested, there is a vacancy. A full school year prior, the situation is different. There's no reason to assume that the job to which they thought he would fit, the job that he would fit into, was still available. That he has to create some sort of evidentiary basis for jumping to that conclusion. I apologize, I forgot the second part of your question. Yeah, that's fine. Okay. And I would also point out that in this case, there's also a serious question of whether Mr. Torres was even disabled in 2017. I think- But that the judge didn't decide, right? No, it did not. So to that extent, we don't have a ruling before us to review, right? This is true, Your Honor. Okay. So what do I make of the fact that he was eventually transferred to another school? What does that do to this case? I don't think that that changes this case. I mean, what happened was there was no adverse impact on Mr. Torres. He returned to school. He was temporarily put in an absent teacher reserve. Ultimately, they found another school for him. And he returned to teaching middle school math, which is what he suggests he is best suited to teach. And so I think in this case, you have a situation where there is no adverse employment action that occurred. And based on that alone, you can affirm summary judgment on this matter. Because under this court's precedent in Parker v. Sony Pictures Entertainment, as well as Knope v. Garland, as well as Notovsky, Mr. Torres was required to show some connection between the denial of the alleged reasonable accommodation and an adverse employment action. And that is completely absent in this case. So let me take you on a variation of what I think was the unanswered part of the judge's question, which was this man went out on unpaid leave. How is that an accommodation for his disability? I mean, he's basically claiming that he's in an emotional state because of the hostility by the principal. So, yes, he's removed from the environment that he deems injurious to him, but without pay. So help me out on how no accommodation claim survives, given his choice of that. I think there's two things to remember in this case. One is that what Mr. Torres requested was unpaid leave. He was provided with what he requested. The other is he also had the option to take the transfer position, which would have put him in a different school. So they provided him two choices, unpaid leave or transfer position. They gave him the option of both things, which he had requested. He came to them and said, I would like a transfer. So I want to be sure I understand, because your adversary is going to have rebuttal. So your position is that at that point, it was prepared to give him either. Yes, Your Honor. Of the two things he requested. That having chosen the one, he can't complain that he didn't get the other. Is that your argument? My argument is that he was given what he requested. He requested a transfer. It was provided. He requested unpaid leave. It was provided. It doesn't make sense if he's going to take an entire school year of unpaid leave for the DOE to leave that position vacant for an entire school year. That's a different argument. I think the reasonableness of whether or not you had to leave the position open, and especially when we didn't know when he was going to come back and whether or not he was going to still need a transfer, is different than what I just heard you a second ago tell us, that it was legally permissible for you to only give him one of them when one of them was the idea of unpaid leave. So I guess my question would be, if we disagree with you that unpaid leave is, in fact, a reasonable accommodation, is there still a way you can prevail? And is that your answer? Because I had understood your answer to be that you were prepared to give him either one of what he asked for, and he chose the one. If you had only offered him unpaid leave, we would have a different scenario here. So bear that in mind as you answer Ms. Perez's question. I think there would be a different scenario if his requests had been different. I think it matters that he requested unpaid leave. I think it matters that he also requested a transfer for the entire school year. I think in the fact that, and I would also point out that he hasn't disputed that he was provided with an accommodation. He doesn't take issue with the unpaid leave as an accommodation. His complaint is that having been given the unpaid leave, they didn't hold open the position. He had a choice. If he had wanted to take that transfer position and start teaching during the 2016 school year at that time, he could have done so. But he didn't. He wanted to take a full year of leave. And they gave it to him, and he had the opportunity, which he took, to apply further in time, closer to the next school year, for a transfer. They didn't prevent him. They didn't say, we will never give you a transfer. They said, look, you're going to be out of school for a year. We need to fill this position. Take your leave. Apply again. And that's exactly what he did. When he applied again, the circumstances had changed. Have I responded to your question? Responded to my part of it. I think going back to your question of whether we can prevail if you find that the accommodation was not reasonable. No, no, no, no, no. That's not the question. The question is, can you prevail if we disagree that unpaid leave is a reasonable accommodation, which is different than is holding a position open a reasonable accommodation? To the extent that if unpaid leave is never a reasonable accommodation, then the question becomes, were they required to grant him the transfer in addition, essentially, because they hadn't accommodated him through the leave? And I would argue that holding a position open for a year later is not a reasonable accommodation. So even if you don't sort of credit the DOE with having provided the full year of leave, but you only say, were they required to provide him with that transfer for a year in the future? I don't think they were, because guaranteeing him a transfer when teachers change and students change and the system is in flux from one year to the next is a difficult thing to do. They would have to hold the position open. So, again, you come back to the situation where you're asking them to hold this open. And I would point out that other circuits have held that holding a position vacant for an extended period of time, like a year or six months, is not a facially reasonable accommodation. And in that situation, I would say that we still prevail. Okay. Thank you, Your Honors. Mr. Ricotta, you've got two minutes on rebuttal, if you may. And I think you've got a good sense of some of the things that we're interested in. We can't hear you now, sir. I'm sorry. I think evidence is a matter. I mean, practical reality is a matter. I mean, these cases, employment cases are largely facts here are that the unpaid leave, frankly, it's a contractual right. So it's not as though because he requested and was granted the transfer, that somehow because he then needs an unpaid leave, that the Department of Communications should now be entitled to rescind something that they previously received. Well, let me be sure I understand you. He couldn't be both transferred and on unpaid leave at the same time, right? Of course he could. Let me put it this way. Tell me how that would have occurred, what it would have looked like. So for example, Your Honor, if he had, instead of trying to proactively seek this restoration of health, if he had accepted the transfer, gone to another school, and three days in submitted paperwork for restoration of health leave, he would get it contractually because he's entitled to. They can't deny it. And then what would have happened at the school where he was on leave, the transferred school? The same thing that happened at the school that he was not transferred out. They would have filled his spot with one of the many ATRs they have in their system, one of the many roving teachers they have in their system. They would have filled that spot for the period of time that he was out. That part of our argument is there was no one to park him to the Department of Communications. Well, let me ask you. I mean, since I don't think you can really argue that that's an ideal situation from the perspective of the children in the school. So to the extent that's what you're saying, how is that a reasonable accommodation to basically hold him? Let me just finish the question so that I'm clear. How is it a reasonable accommodation to let him be on the books at school two instead of school one with a substitute teacher or an interim teacher teaching the children? How is that a reasonable accommodation? Well, that's what happens with every teacher that goes out on a restoration of health leave, a disability leave, a child care leave. That's what happens in the deal. But now we're talking about whether that will happen at school one or school two. I mean, he's not really affected at that point. But that's what you're saying should have happened. They should have let him transfer so that he was on the books at school two, fill that spot. And for them not to do that was the violation. Okay, I understand your argument. I want to clarify one piece of timing, though, related to that. My understanding, based on my read of the record, and I would appreciate numbers so I can go check, was that he got and received the transfer application in August, and it was later that he applied for a second restoration of health leave of absence for the rest of the 2016-2017 year, that he got the transfer, then got the leave, and then that is when it became questionable as to, you call it rescinded, somebody else might call it holding in abeyance, but he actually did receive the transfer before he got the leave. Yes, and that's part of why we brought the case here on it, because the leave was approved. At that point, there's no argument that can reasonably be made that that was not an accommodation that should have been granted, or that there was no vacancy or anything like that. There's no argument at that point. And that's why the Department of Education stamped that as approved. The reason for the accommodation is probably notorious as entitled is. So the only change, actually, that then occurred was he said, hey, thank you so much. That's going to really be great so that I don't have to experience what I experienced being in school. I need to get healthy and then come back. Your argument today seems to be just a little different from what's in your brief. At page eight of your brief, you talk about asking for two accommodations, a transfer and a restoration of leave. You say that- Yeah. That's in April 2016. Am I right on that? August 2016? I'm running to page eight. In April of- You said- April- I'm sorry. That you were asking for two accommodations. Yes. That's the start of the second paragraph. So that suggested to me that you viewed these as two accommodations, but that's not your position today, right? I think that while we couched the paid leave as a requested accommodation for his medical, for his health, I do think that from a collective bargaining standpoint- Well, I'm sorry. I think, and I don't want to put words in Judge Raju's mouth. Of course. I think what she's asking you is did you request them both at the same time or was there a temporal- Well, really what I'm asking is today, and even in your brief, it's in conjunction. You wanted both of them, not just one or the other. Yes, Your Honor. See, because when I first read it, I thought that you meant one or the other, and now today I understand you're saying you wanted both. No, Your Honor, and to be clear on that. Our argument is the Americans with Disabilities Act entitles people to reasonable accommodation or accommodations for a known disability. In this case, these were two accommodations that he required that they should have provided, and by making him make a false choice of one or the other, they violated his rights. The idea that he wasn't harmed by that, he was. He had to stay out longer because he knew he was going to have to return. I don't understand. May I ask a question? Of course. When he goes out for health restoration, the school has at least good reason to expect that he will get health restoration and that when he returns close to a year later, he will no longer need the transfer. And furthermore, did he manifest dissatisfaction at the time that he took the health restoration leave? Did he manifest objection to the fact that he had not been granted the transfer? Yes. Yes, he did. It's in his testimony, but he absolutely at the time that they told him that if he was going to take a restoration of health that he wasn't going to get the transfer, he objected. All right, so why is it – why can't the school, why can't the board expect that after he gets the leave for restoration of health, he is secured restoration of health and will no longer need the transfer? That's a very fair question, Your Honor. I think the answer to that is that the medical issue that he was dealing with was an emotional trauma that stems from working with a specific person. And the Department of Education approved that, agreed with that. Their documentation says that he is happy to work with them. I don't think that answers my question. I'm sorry? I don't think that answers my question. Yes, it was a problem of dealing with a specific person, but he got restoration of health. He had the opportunity to get restoration. I think what the answer to that would be is – or is – is that there's nothing in his medical record to suggest that even if he has the ability to restore his health, that that would be healthy or acceptable for him to then go back to working with that same individual in that same environment. But he did for a time, didn't he? Or did I miss that again? He did go back to the same school. Because they denied the restoration – they denied the hardship transfer, and he was out without pay. Yeah, he did, and then he was able to get them to access him and go to another school. But he stayed out longer than he otherwise would have because he was fearful of going back to that environment and experiencing what he had been experiencing. I mean, this gets into the whole disability question, which the district court didn't decide, but Dr. Garner's note says that he recovered from his illness. His illness is the post-traumatic stress disorder, right? Yes. Okay. Thank you. Thank you. Are we all good? Okay. Thank you so much. We will take this under advisement. Thank you. Thank you very much for your time. Thank you. We will now hear argument in Burns v. Schell. I'll give you guys a minute to get up there. Okay. Mr. Tolentino, you have reserved two minutes for rebuttal. Is that correct? Yes, Your Honor, that's correct. Okay. And I will just remind you that Gentle Dowell is on monitor to make sure you're mindful of any questions that he may have. And we are ready to begin. Please. Great. Good morning, Your Honors, and may it please the court. My name is Rachel Tolentino of Kaplan, Hecker, and Fink, appearing as court-appointed pro bono counsel for plaintiff appellant George Burns. This court should reverse the district court's judgment for three independent reasons. The first is that the three-strikes rule of the PLRA applies only to civil actions, and Burns 2 and 3 were instead, quote, actions in the nature of mandamus under 1361. Second is that even if Section 1361 mandamus actions are civil actions, Burns 2 and 3 don't count as strikes because they were dismissed for lack of subject matter jurisdiction.